## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

_____

| | | |
|---|---|---|
| NOKIA CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| APPLE INC., | ) | |
| | ) | |
| Defendant. | ) | CIVIL ACTION NO. 10-CV-249 |
| | ) | |
| APPLE INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NOKIA CORPORATION and NOKIA INC., | ) | |
| | ) | |
| Counterclaim-Defendants. | ) | |

_____

**APPLE INC.'S MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER**
**VENUE TO THE DISTRICT OF DELAWARE PURSUANT TO 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

I.      Nature And Stage Of The Proceedings .................................................................1

II.     Preliminary Statement ...........................................................................................1

III.    Factual Background ................................................................................................2

        A.      The Related Pending Litigation In The District Of Delaware ....................2

        B.      The Parties' Relationship To The Districts Of Delaware And
                Wisconsin ....................................................................................................7

                1.      Neither Nokia Nor Apple Have Any Connection To
                        Wisconsin ........................................................................................7

                2.      Nokia Made The Choice To Litigate This Business Dispute
                        Between Nokia And Apple On Delaware. .........................................8

                3.      In Contrast, Nokia Has Moved To Transfer The Only Case
                        Filed Against It In This District Because Nokia Lacks "Any
                        Connection To This District Or The State Of Wisconsin" ...............8

IV.     Argument ..............................................................................................................9

        A.      The Legal Standard For Motions To Transfer Under 28 U.S.C.
                § 1404(a) .....................................................................................................9

        B.      The Convenience Of The Parties, The Convenience Of The
                Witnesses, The Interests Of Justice, And Basic Common Sense All
                Weigh Strongly In Favor Of Transfer To Delaware ...............................10

                1.      The Parties' Lack Of Any Meaningful Connection To
                        Wisconsin Supports Transfer And Means That Nokia's
                        Choice Of Forum Deserves No Weight ..........................................10

                2.      The District Of Delaware Is A Clearly More Convenient
                        Forum For The Parties And The Witnesses ....................................11

                3.      The Interests Of Justice Require Transfer To The District
                        Of Delaware ...................................................................................12

V.      Conclusion ..........................................................................................................16

## TABLE OF AUTHORITIES

Federal Cases

*Abbott Labs. v. Selfcare, Inc.*,
  No. 98-CV-7102, 1999 WL 162805 (N.D. Ill. 1999) ................................................... 15

*Amazon.com v. Cendant Corp.*,
  404 F. Supp. 2d 1256 (W.D. Wash. 2005) ........................................................ 14, 15

*Broadcom Corp. v. Agere Sys. Inc.*,
  No. 04-CV-066-C, 2004 WL 1176168 (W.D. Wis. 2004) ...................................... 14

*Broadcom Corp. v. Microtune, Inc.*,
  No. 03-CV-0676-S, 2004 WL 503942 (W.D. Wis. 2004) ...................................... 15

*Chicago, Rock Island and Pac. R.R. Co. v. Igoe*,
  220 F.2d 299 (7th Cir. 1955) .................................................................... 11

*Coffey v. Van Dorn Iron Works*,
  796 F.2d 217 (7th Cir. 1986) ............................................................... 11, 12

*Continental Grain Co. v. The Barge FBL-585*,
  364 U.S. 19 (1960) ............................................................................. 2, 12

*D2L Ltd. v. Blackboard, Inc.*,
  671 F. Supp. 2d 768 (D. Md. 2009) .......................................................... 12, 14

*DataTreasury Corp. v. First Data Corp.*,
  243 F. Supp. 2d 591 (N.D. Tex. 2003) ......................................................... 14

*Digeo, Inc. v. Gemstar-TV Guide Int'l, Inc.*,
  No. 06-CV-1417RSM, 2007 WL 295539 (W.D. Wash. 2007) ................................ 14

*Encyc. Britannica, Inc. v. Magellan Navigation, Inc.*,
  512 F. Supp. 2d 1169 (W.D. Wis. 2007) ...................................................... 13

*First Health Group Corp. v. Allcare Health Mgmt. Sys., Inc.*,
  No. 01-CV-1790, 2001 WL 686777  (N.D. Ill. 2001) .......................................... 12

*Heller Fin., Inc. v. Midwhey Powder Co.*,
  883 F.2d 1286 (7th Cir. 1989) ................................................................ 12

*In re Ephedra Prods. Liab. Litig.*,
  314 F. Supp. 2d 1373 (J.P.M.L. 2004) ......................................................... 13

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ................................................................. 9

*In re Hoffmann-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009) ................................................................ 9

*In re Nintendo Co.*,
  589 F.3d 1194 (Fed. Cir. 2009) ................................................................ 9

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008) ................................................................ 9

*Lineage Power Corp. v. Synqor, Inc.*,
  No. 08-CV-397-SLC, 2009 WL 90346 (W.D. Wis. 2009) .................................... 10, 12, 13, 14

*Piper Aircraft Co.*,
  454 U.S. 235 (1981) ................................................................................ 11

*Seiko Epson Corp. v. Optoma Tech., Inc.*,
  No. 06-CV-06946-MJJ, 2007 WL 1793776 (N.D. Cal. 2007) ................................ 13

*Solaia v. Rockwell*,
  No. 03-CV-566, 2003 WL 22057092 (N.D. Ill. 2003) ........................................ 14

*U.S.O. Corp. v. Mizuho Holding Co.*,
  547 F.3d 749 (7th Cir. 2008) .................................................................... 11

*Uniroyal Engineered Prods., L.L.C. v. Omnova Solutions Inc.*,
  No. 08-CV-586-SLC, 2009 WL 736700 (W.D. Wis. 2009) .................................... 9, 10

<u>Federal Statutes</u>

28 U.S.C. § 1404(a) ................................................................................ 1, 9

## I.  Nature And Stage Of The Proceedings

Plaintiff Nokia Corporation ("Nokia") filed its Complaint for Patent Infringement against Defendant Apple Inc. ("Apple") on May 7, 2010 (Docket No. 1).   Apple filed its Answer, Defenses, and Counterclaims on June 28, 2010.

## II.  Preliminary Statement

This case arises out of a patent and licensing dispute between Nokia and Apple.  The same overarching dispute is already the subject of two pending lawsuits that Nokia initiated in the U.S. District Court for the District of Delaware – the district Nokia chose as the forum for the parties' larger dispute.  Because all three cases arise out of a single business dispute between the same parties, about the same products, all three cases should be litigated in the same venue. Apple accordingly submits this Motion to Transfer under 28 U.S.C. § 1404(a).  In this case, the District of Delaware—the district Nokia chose for its two other pending patent infringement cases against Apple—is the venue consistent with the convenience of the parties, the convenience of the witnesses and the interests of justice.

Moreover, this case has no meaningful connection to the Western District of Wisconsin. As Nokia itself asserted in 2007 in seeking to transfer a case out of this district—and as is still true today—Nokia does not have "any connection to this district or the state of Wisconsin."  (Ex. 1, Nokia Reply In Support Of Motion to Transfer at 1, *Qualcomm Inc. v. Nokia Corp. et al*., No. 3:07-CV-0187 (W.D. Wis., June 25, 2007) (emphasis in original).  Exhibits referenced in this memorandum are attached to the Declaration of Mark Selwyn in Support of Apple Inc.'s Motion to Transfer Venue to the District of Delaware Pursuant to 28 U.S.C. § 1404(a).)  Likewise, Apple does not maintain any relevant offices in Wisconsin; it has no relevant employees in Wisconsin;

and it has no relevant documents or other evidence in Wisconsin.[1]  (Declaration of Mark Bentley in Support of Apple Inc.'s Motion to Transfer Venue to the District of Delaware Pursuant to 28 U.S.C. § 1404(a) ("Bentley Decl.") at ¶ 7.)

There can be no genuine dispute, especially in light of Nokia's previously-filed litigation in the District of Delaware, that the District of Delaware is a clearly more convenient forum for the parties and the witnesses (including the overlapping third-party witnesses).  Transfer would likewise serve the interests of justice by avoiding duplicative litigation and potentially conflicting rulings, and by facilitating consolidation of these related cases.  As the Supreme Court has made clear, litigating the same issues in multiple cases across different district courts inevitably "leads to the wastefulness of time, energy and money that [28 U.S.C.] § 1404(a) was designed to prevent."  *Continental Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 26 (1960).

For these reasons, as set forth more fully below, Apple respectfully requests that this Court transfer the present action to the U.S. District Court for the District of Delaware.

### III.  Factual Background

#### A.     The Related Pending Litigation In The District Of Delaware

This case is part of an ongoing business dispute between Nokia and Apple about the technology used in the parties' wireless communication devices, namely Apple's iPhone, iPhone 3G, iPhone 3GS, and recently launched iPad 3G products, and Nokia's E71, N97, N900, N8 and related products.  The dispute arose from failed licensing negotiations between Nokia and Apple, in which Nokia attempted to improperly leverage certain of its patents in an effort to obtain a

---

[1] Three of Apple's more than 220 retail stores are located in Wisconsin.  (Bentley Decl. at ¶ 7.)  The Apple retail stores in Wisconsin are engaged only in general sales, service, and marketing activities.  *Id.*

license to the highly valuable Apple technology used in Apple's iPhone products.  As one Nokia executive candidly conceded, with the launch of the iPhone, "the market changed suddenly and [Nokia was] not fast enough changing with it."  (Ex. 2, Abhinav Ramnarayan, "Nokia Fights Back For Share Of Smartphone Market," The Guardian (London), Sept. 2, 2009, at 1.)

When Apple rejected Nokia's demands, Nokia began filing a series of complaints claiming that Apple's products infringe Nokia's patents.  In the first case, filed on October 22, 2009, in the District of Delaware, Nokia alleged infringement of ten patents based on "wireless communication devices such as the Apple iPhone, the Apple iPhone 3G, and the Apple iPhone 3GS."  (*See* Ex. 3, Compl. ¶ 70, *Nokia Corp. v. Apple Inc.*, No. 09-CV-791 (D. Del. Oct. 22, 2009) ("Delaware I" or the "791 Case").)  Apple filed counterclaims for breach of contract and attempted monopolization (based on Nokia's promotion of standards to the relevant standards-setting organizations while concealing its own patent applications allegedly covering those standards, as well as its assertion of patents it was legally obligated to license on fair, reasonable, and non-discriminatory terms), as well as infringement of nine Apple patents by Nokia's N900, as well as other related products.  (*See* Ex. 4, Apple's First Am. Answer, Defenses, and Countercls.  ¶¶ 201, 207, 213, 219, 225, 231, 237, 243, 249, *Nokia Corp. v. Apple Inc.*, No. 09-CV-791 (D. Del. Feb. 19, 2010).)

On December 11, 2009, Nokia filed a second complaint in the District of Delaware, alleging infringement of seven additional patents based on Apple's iPhone 3G and iPhone 3GS products.  (*See* Ex. 5, Compl. ¶ 9, *Nokia Corp. v. Apple Inc.*, No. 09-CV-1002 (D. Del. Dec. 29, 2009) ("Delaware II" or the "1002 Case").)  Nokia also raised the same claims in a related complaint in the U.S. International Trade Commission ("I.T.C.").  (*See* Ex. 6, Compl., *In re Certain Mobile Communications and Computer Devices and Components Thereof*, Investigation

No. 337-TA-701 (Dec. 29, 2009).)[2]   Apple responded to Nokia's second Delaware complaint with counterclaims for infringement of nine Apple patents, again based on Nokia's N900, as well as other related products.   (*See* Ex. 7, Apple's Answer, Defenses, and Countercls. ¶¶ 52, 76, *Nokia Corp. v. Apple Inc.*, No. 09-CV-1002 (D. Del. Feb. 24, 2010).)   Apple also filed a related Complaint in the I.T.C. alleging infringement of the same nine Apple patents.   (*See* Ex. 8, Compl., *In re Certain Mobile Communications and Computer Devices and Components Thereof*, Investigation No. 337-TA-704 (Jan. 15, 2010).)

Nokia filed this third lawsuit, alleging infringement of five additional patents, just four days after the Delaware court entered its scheduling order in the first Delaware case—an order that permits Nokia to amend its complaint through <u>August 30, 2010</u>.   (Ex. 9, Docket containing Scheduling Order, Delaware I, May 3, 2010.)   Nokia's complaint focuses on the same Apple products: the iPhone, iPhone 3G and iPhone 3GS, as well as, for one of the five patents, Apple's iPad.   Compl. ¶ 24.   Apple responded to Nokia's third complaint with counterclaims for infringement of seven additional Apple patents, based on Nokia's N97, N900, and N8, and related mobile communication products.   (Answer, Defenses, and Countercls. ¶¶ 39, 44, 49, 54, 59, 69.)

There can be no question that this case is part of the same dispute as Nokia's two Delaware cases.   The cases involve the same parties, the same technology, and the same products, and will involve numerous common issues of law and fact.   By way of example only:

---

[2]  Nokia and Apple claimed infringement of the same patents in the second Delaware action and the I.T.C.   Because the I.T.C. is authorized only to issue exclusion orders, and cannot award damages, it is a common practice for parties to initiate simultaneous actions in the I.T.C. and a federal district court.

- The same products are at issue in all three cases. Nokia has accused the same Apple products—the iPhone, iPhone 3G, and iPhone 3GS—of infringement in all three suits. Apple has accused Nokia's N97, N900, N8, and other related products.

- The same technology will be at the center of all three cases. The parties' claims for infringement will require the Court and the jury to understand the manner in which mobile devices interface with users, and transmit and receive user information over the air, including the manner in which these devices encode, modulate, and encrypt the information transmitted over the air, and send and receive related control information. (Compl. ¶¶ 14-23.)

- Indeed, the cases involve not only the same technology, but some of the very same components. For example, Nokia has included allegations focused on Apple's antennas in both this case and in Delaware. (Compl. ¶¶ 18-23, 29-39, 45-49; Ex. 5, Delaware II Compl. ¶¶ 19-27.) In fact, three of the five patents Nokia has asserted in this case accuse Apple's antennas, the same antennas accused in Delaware.

- Similarly, the modulator that is one of the focuses of Nokia's allegations here (Compl. ¶¶ 14-15, 40-44) is embedded on the same microchip, manufactured by the same third-party (Infineon Technologies), as the voltage control oscillator ("VCO") that is one of the focuses of Nokia's allegations in Delaware. (*See* Ex. 5, Delaware II Compl. ¶¶ 10-18.)

- The user interfaces on the parties' accused phones also will be a focus both of this case and in Delaware. Four of the patents Nokia has asserted in Delaware, and two of the patents Apple has asserted in Delaware, relate to the parties' user interfaces. (Ex. 5, Delaware II Compl. ¶¶ 35-72; Ex. 4, Delaware I First Am. Answer, Defense, and Countercls. ¶¶ 211-216, 229-234.) Two of the patents Apple has asserted in this case also focus on the user interface. (Answer, Defenses and Countercls. ¶¶ 24-27, 38-47.)

- In addition, device interfaces on the parties' phones will be a focus both of this case and in Delaware. One of the patents Apple has asserted in Delaware and two of the patents that it has asserted here related to device interfaces. (Ex. 4, Delaware I First Am. Answer, Defenses, and Countercls. ¶¶ 199-204; Answer, Defenses, and Countercls. ¶¶ 30-33, 48-57.)

- Furthermore, several of the patents Apple has asserted in Delaware, and one of the patents it has asserted here, relate to object oriented operating systems. (Ex. 4, Delaware I First Am. Answer, Defenses, and Countercls. ¶¶ 217-222, 235-240; Answer, Defenses, and Countercls. ¶¶ 34-35, 63-67.)

- The same financial information also will be relevant to all three cases. The parties' respective claims for damages will require discovery of the same product sales information, the same documents and, in all likelihood, testimony from the same marketing and finance employees at Apple and Nokia.

- The same third-party manufacturers are likely to be subpoenaed for documents and testimony in this case as well as in Delaware. These third parties include, for example, Infineon Technologies, Foxconn Electronics Inc., and Samsung Electronics America, Inc.

- The same prosecuting attorneys are also likely to be subpoenaed in all three cases. For example, the same lawyers at Perman & Green LLP prosecuted three of the patents Nokia has asserted in Wisconsin (U.S. Patent Nos. 6,373,345; 7,558,696; and 6,603,431) (Compl. at Exs. A, B, E), as well as six of the patents Nokia has asserted in Delaware (U.S. Patent Nos. 5,802,465; 6,359,904; 6,694,135; 5,946,651; 6,882,727; and 6,262,735) (Ex. 3, Delaware I Compl. at Exs. A, B, F, G, H; Ex. 5, Delaware II Compl. at Ex. F.)

Moreover, in addition to these substantial overlaps with the litigation between Apple and Nokia in Delaware, the case also has significant overlaps with three pending lawsuits between Apple and High Tech Computer Corp. and its subsidiaries (collectively, "HTC") in Delaware.[3] Indeed, three of the patents that Apple has asserted in this case have also been asserted against HTC in Delaware.

Given the substantial overlaps in the pending cases between Nokia, Apple, and HTC, Apple has moved to consolidate the two Nokia cases (791 and 1002 Cases) and the two HTC cases (166 and 167 Cases) currently pending in Delaware, and will move to consolidate this case as well, if the Court agrees to transfer the case to Delaware.[4]  (*See* Ex. 10, Apple Inc. and Next Software, Inc.'s Mot. For Consolidation, *Nokia Corp. v. Apple Inc.*, No. 09-CV-791 (D. Del. May 24, 2010); Ex. 11, Apple Inc. and Next Software, Inc.'s Mot. For Consolidation, *Nokia Corp. v. Apple Inc.*, No. 09-CV-1002 (D. Del. May 24, 2010); Ex. 12, Apple Inc. and Next Software, Inc.'s Mot. For Consolidation, *Apple Inc. et al. v. High Tech Computer Corp. et al.*, No. 10-CV-166 (D. Del. May 24, 2010); Ex. 13, Apple Inc. and Next Software, Inc.'s Mot. For Consolidation, *Apple Inc. et al. v. High Tech Computer Corp. et al.*, No. 10-CV-167, (D. Del. May 24, 2010).)  Consolidation is not only appropriate, but also could be easily accomplished

---

[3] The three cases are *Apple Inc. et al. v. High Tech Computer Corp. et al.*, No. 10-CV-166 (the "166 Case"), *Apple Inc. v. High Tech Computer Corp. et al.*, No. 10-CV-167 (the "167 Case"), and *Apple Inc. v. High Tech Computer Corp. et al.*, No. 10-CV-544 (the "544 Case").

[4] The 544 Case was filed early last week on June 21, 2010.  Apple intends to add the 544 Case to the pending motions to consolidate.

because all six cases are in the early stages of litigation.[5]  The court issued its scheduling order in the first Delaware action on May 3, 2010, and the schedule negotiated and jointly submitted by the parties in that case leaves ample time to incorporate Nokia's allegations in this case—discovery will not close until July 11, 2011.  (*See* Ex. 9, Docket containing Scheduling Order, Delaware I, May 3, 2010.)

B.    **The Parties' Relationship To The Districts Of Delaware And Wisconsin**

1.    **Neither Nokia Nor Apple Have Any Connection To Wisconsin**

Neither Nokia nor Apple has any meaningful relationship with the Western District of Wisconsin.  Nokia is incorporated under the laws of Finland with its principal place of business in Finland.  (Compl. ¶ 2.)  Nokia's indirect U.S. subsidiary, Nokia Inc., is a Delaware corporation with its principal place of business in Texas.  Apple Inc. is a California corporation with its principal place of business in Cupertino, California; it has no corporate offices or research facilities in Wisconsin.  (Bentley Decl. at ¶¶ 2, 6, 7.)

Given the parties' lack of any meaningful contacts with Wisconsin, it is unlikely that <u>any</u> material fact witnesses or documents will be located in Wisconsin.  *Id.* at ¶ 7.  Apple and Nokia do not conduct relevant operations or maintain relevant facilities in Wisconsin.[6]  *Id.* at ¶¶ 6, 7.  Neither do any relevant third parties.

---

[5] HTC has not answered Apple's complaints in the 166, 167, and 544 Cases.

[6] Apple's principal place of business is in California; both Apple and Nokia maintain relevant facilities in California; and several third parties that manufacture components for relevant Apple products are based in California or maintain offices in California.  A number of witnesses and documents may be overseas.  Nokia is based in Finland, and the available evidence suggests that all of the named inventors for the asserted Nokia patents reside either in Finland or Great Britain.  Moreover, a number of potentially relevant third-party manufacturers are based overseas, including Foxconn Electronics Inc. (based in Taiwan).

**2.    Nokia Made The Choice To Litigate This Business Dispute Between Nokia And Apple In Delaware**

Nokia cannot deny that the District of Delaware is a convenient forum.  Indeed, Nokia made the choice to litigate this ongoing business dispute between Nokia and Apple in the District of Delaware—where its U.S. subsidiary, Nokia Inc., is incorporated—by filing its first two lawsuits against Apple in that forum.  (*See* Ex. 3, Delaware I Compl.; Ex. 5, Delaware II Compl.)

In fact, Nokia has chosen Delaware not only for its larger dispute with Apple, but also for comparable disputes with two other major telecommunications companies, Interdigital Communications Corporation and Interdigital Technology Corporation (No. 1:05-CV-00016) (Jan. 12, 2005), and Qualcomm, Inc. (No. 1:06-CV-00509) (Aug. 16, 2006).  Nokia filed those actions, like this one, after failed licensing negotiations.  Moreover, Apple has chosen Delaware for its three disputes with HTC.

**3.    In Contrast, Nokia Has Moved To Transfer The Only Case Filed Against It In This District Because Nokia Lacks "Any Connection To This District Or The State Of Wisconsin"**

In sharp contrast with its decision to sue Apple in Wisconsin, in the only prior case (according to PACER) in which Nokia appeared in this district, Nokia moved to transfer based on the company's lack of contacts with Wisconsin and its interest in consolidating the case with related litigation.  (*See* Ex. 14, Nokia's Mot. to Transfer at 9-10, *Qualcomm Inc. v. Nokia Corp. et al.*, No. 3:07-CV-0187 (W.D. Wis. May 24, 2007).)  Nokia argued, in its motion, that Wisconsin was an <u>inconvenient</u> forum because neither of the parties had "<u>any</u> connection to this district or the state of Wisconsin."  (Ex. 1, Nokia Reply In Support Of Motion to Transfer at 1 (emphasis in original).)  It also emphasized the efficiencies of consolidating related cases involving the same general technology, *id.* at 7, the same types of efficiencies that could be accomplished by transferring this case to the District of Delaware.

## IV. **Argument**

**A.     The Legal Standard For Motions To Transfer Under 28 U.S.C. § 1404(a)**

The federal venue statute provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  In considering motions under § 1404(a), courts generally analyze the plaintiff's choice of forum as well as the statutory factors of (1) convenience to the parties; (2) convenience to the witnesses; and (3) the interests of justice.  *See Uniroyal Engineered Prods., L.L.C. v. Omnova Solutions Inc.*, No. 08-CV-586-SLC, 2009 WL 736700, at *3 (W.D. Wis. Mar. 19, 2009).  However, a plaintiff's choice of forum deserves no deference unless the plaintiff is "litigating in [its] home forum."  *Id.*

The Federal Circuit, which maintains appellate jurisdiction over this case, has emphasized the importance of careful application of venue principles in a series of recent decisions.  In *In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008), for example, the court found that the district court had "clearly abused its discretion in denying transfer from a venue with no meaningful ties to the case."  *Id.* at 1321 (emphasis added) (issuing writ of mandamus transferring venue); *see also In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (issuing writ of mandamus transferring venue) ("in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer"); *In re Genentech, Inc.*, 566 F.3d 1338, 1348 (Fed. Cir. 2009) (issuing writ of mandamus transferring venue) ("There are no witnesses or parties within Texas.  Moreover, there are no relevant documents there. … Thus, the convenience to the witnesses and parties, availability of compulsory attendance and access to evidence factors all weigh significantly in favor of transfer."); *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (issuing writ of mandamus transferring venue) ("As in

- 9 -

*Volkswagen*, *TS Tech*, and our most recent decision, *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009), there is a stark contrast in relevant, convenience, and fairness between the two venues.").

**B.     The Convenience Of The Parties, The Convenience Of The Witnesses, The Interests Of Justice, And Basic Common Sense All Weigh Strongly In Favor Of Transfer To Delaware**

Nokia has already chosen the District of Delaware for this business dispute between Nokia and Apple.  This case should be transferred to that district, where it can be consolidated with Nokia's two other recently-filed cases, which are also based on Apple's iPhone products, and Apple's two related cases against HTC.  Given the obvious benefits of trying all the concurrent and related cases in the same district court—not to mention Nokia's previous insistence that it should not litigate in this Court because it has <u>no</u> ties to the Western District of Wisconsin—the District of Delaware is a clearly more convenient forum for the parties and the witnesses, and transfer would serve the interests of justice.

**1.     The Parties' Lack Of Any Meaningful Connection To Wisconsin Supports Transfer And Means That Nokia's Choice Of Forum Deserves No Weight**

Nokia's choice of forum deserves no weight in the transfer analysis, because Nokia is not "litigating in [its] home forum," *Uniroyal*, 2009 WL 736700, at *3, and because "this case has no discernible connection to this district" or even "to this state."  *Lineage Power Corp. v. Synqor, Inc.*, No. 08-CV-397-SLC, 2009 WL 90346, at *5 (W.D. Wis. Jan 13, 2009).  As Nokia has admitted, neither Apple nor Nokia has "<u>any</u> connection to this district," (Ex. 1, Nokia Reply In Support Of Motion to Transfer at 1), and it is highly unlikely that any relevant fact witness resides or is employed in Wisconsin.  (Bentley Decl. at ¶ 7.)  This complete lack of connection to Wisconsin "militates toward transfer."  *Lineage Power Corp.*, 2009 WL 90346, at *5; *see also*, *e.g.*, *U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 752 (7th Cir. 2008) ("The more tenuous

- 10 -

a party's relation to the forum, the weaker the case for litigating there."); *cf. Chicago, Rock Island and Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955) ("this factor has minimal value where none of the conduct complained of occurred in the forum selected by the plaintiff").

> **2.    The District Of Delaware Is A Clearly More Convenient Forum For The Parties And The Witnesses**

The District of Delaware is a clearly more convenient forum because the parties are already conducting related litigation in that district.[7]  The parties and their principal lawyers will be litigating in the District of Delaware regardless of where this case proceeds.[8]  The same applies to many of the witnesses in this case, because their testimony will be required in Delaware.

Thus, while neither the parties nor the witnesses have any significant ties to Wisconsin, both parties and many of the witnesses will be appearing in the District of Delaware regardless of where this case proceeds.  Moreover, as discussed more fully below, "related litigation should be transferred to a forum where consolidation is feasible," *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986), because consolidation permits effective coordination and can eliminate the need for duplicative appearances of both the parties and the witnesses.  For all of these reasons, the convenience of the parties and the witnesses strongly weighs in favor of transfer to the District of Delaware.

---

[7] The mere fact that Nokia chose to file in this district does not demonstrate that the Western District of Wisconsin is a convenient forum for Nokia.  *See Piper Aircraft Co.*, 454 U.S. 235, 255-56 (1981) ("when the home forum has been chosen, it is reasonable to assume that this choice is convenient.  When the plaintiff is foreign, however, this assumption is much less reasonable.").

[8] The lead law firms for Nokia and Apple are the same in all of the relevant cases.

3.        **The Interests Of Justice Require Transfer To The District Of Delaware**

The interests of justice, which are often "determinative" in transfer motions, are primarily concerned with "the efficient administration of the court system." *Id.* The interests of justice "may be determinative . . . even if the convenience of the parties and witnesses might call for a different result." *Id.* at 220. In this case, the interests of justice weigh decisively in favor of transfer to the District of Delaware.

One of the most important factors in assessing the "interests of justice" is whether transfer would permit related litigation to proceed in the same district. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) ("[t]he 'interest[s] of justice' include such concerns as ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case."). Transfer is particularly appropriate where, as here, it would facilitate consolidation of related cases. *See Coffey*, 796 F.2d at 221 ("[R]elated litigation should be transferred to a forum where consolidation is feasible."). As the Supreme Court has emphasized, litigating the same issues in different courts inevitably "leads to the wastefulness of time, energy and money that [28 U.S.C.] § 1404(a) was designed to prevent." *Continental Grain Co.*, 364 U.S. at 26; *see also Lineage Power Corp.*, 2009 WL 90346, at *1 ("efficiency and common sense" favored transfer to a district where related cases were already pending); *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 783 (D. Md. 2009) (citing "economies" in conducting related cases in one forum); *First Health Group Corp. v. Allcare Health Mgmt. Sys., Inc.*, No. 01-CV-1790, 2001 WL 686777, at *2 (N.D. Ill. June 15, 2001) ("As a rule, cases should be transferred to the district where related actions are pending.").

It is well recognized, for example, that "consolidation . . . provides genuine opportunities measurably to streamline discovery," and "makes it possible to save some witnesses time and money by consolidating their depositions, affidavits and other evidentiary input." *Lineage*

*Power Corp.*, 2009 WL 90346, at \*6.  Conducting the litigation here in separate courts would, for example, require repeated depositions from the same party and third-party witnesses in this case as well as the Delaware cases.  *See, e.g.*, *Encyc. Britannica, Inc. v. Magellan Navigation, Inc.*, 512 F. Supp. 2d 1169, 1177 (W.D. Wis. 2007) ("Since the same or related patents are at issue it is probable that defendants from all cases will depose the same persons and request the same documents and technical drawings from plaintiff.").

Litigating the parties' Delaware and Wisconsin claims in multiple actions also would considerably complicate the discovery, pretrial, and trial processes, and would almost certainly result in two separate courts considering the same procedural, evidentiary and substantive issues. For example, during the discovery phase of the case, the Delaware and Wisconsin cases are likely to involve the same disputes about matters such as protective orders, motions to compel and quash discovery, and third-party discovery.  As the claims approach trial, the cases are likely to involve similar motions in limine, evidentiary disputes, and disputes over jury instructions. Litigating the larger dispute in multiple cases would require two courts to consider these same issues, resulting in an inefficient use of judicial resources, and a very real risk of conflicting rulings.  *See, e.g., Seiko Epson Corp. v. Optoma Tech., Inc.*, No. 06-CV-06946-MJJ, 2007 WL 1793776, at \*3 (N.D. Cal. Jun. 19, 2007) (ordering transfer where "parallel litigation in two different forums would create a serious risk of conflicting pretrial and trial schedules, not to mention inconsistent management of discovery limits and specialized patent litigation procedures"); *In re Ephedra Prods. Liab. Litig.*, 314 F. Supp. 2d 1373, 1375 (J.P.M.L. 2004) ("[c]entralization . . . is necessary in order to avoid . . . inconsistent or repetitive pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary").

- 13 -

The benefits of consolidation are particularly important in complex patent cases, where consolidation "reduce[s] the need for duplicative time-consuming [technological] tutorials" necessary for both the Court and the jury to understand the issues in dispute. *Broadcom Corp. v. Agere Sys. Inc.*, No. 04-CV-066-C, 2004 WL 1176168, at \*1 (W.D. Wis. May 20, 2004); *see also Lineage Power Corp.*, 2009 WL 90346, at \*6 (describing efficiencies where there is a "concrete overlap between the technology"). Consolidation also reduces the risk of conflicting rulings on claim constructions for the same patents. *See D2L Ltd.*, 671 F. Supp. 2d at 784 (where patents have the same inventors, drawings and specifications, "transfer will promote judicial economy and avoid the possibility of inconsistent construction of the [patents-in-suit], which cover the same technology and have many overlapping claims."); *DataTreasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 595 (N.D. Tex. 2003) (transfer is especially appropriate "in patent cases, where the court is required to interpret the claims of the patent in-suit.").

Moreover, to the extent that either of the courts attempts to promote a negotiated settlement, negotiations in one case will be inextricably intertwined with the discussions in the other case. Allowing the related claims to proceed in separate actions could reduce the settlement pressure on the parties and complicate settlement negotiations. *See Digeo, Inc. v. Gemstar-TV Guide Int'l, Inc.*, No. 06-CV-1417RSM, 2007 WL 295539, at \*5 (W.D. Wash. Jan. 29, 2007) (citing increased likelihood of settlement through consolidation of related claims); *Solaia v. Rockwell*, No. 03-CV-566, 2003 WL 22057092, at \*3 (N.D. Ill. Sept. 2, 2003) ("[I]f these cases proceed in different districts, there is little if any possibility of consolidating them for discovery, settlement negotiations or trial."); *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1262 (W.D. Wash. 2005) ("While consolidation of the two cases is a matter for the Delaware court to decide, the feasibility of such consolidation is a factor that this Court may

consider in deciding whether to allow a transfer.  Even if they are not consolidated, transfer of this case will allow a global settlement of the related cases.").

These same benefits will accrue even if the cases are not fully consolidated, particularly here, where all of the litigation is in its early stages.  For example, even without full consolidation, litigating all cases in the same forum will facilitate coordination of the practical aspects of discovery, thereby reducing duplicative efforts and preserving the resources of the courts and parties and facilitating the resolution of any discovery disputes.  Similarly, the parties and the courts will benefit from litigating disputes before a court that is familiar with the parties, their products, and the essential technology.  *See, e.g.*, *Amazon.com*, 404 F. Supp. 2d at 1261 (cases involving different software patents were "similar enough that they should be considered by the same court in order to conserve judicial resources and prevent inconsistent rulings"); *Broadcom Corp. v. Microtune, Inc.*, No. 03-CV-0676-S, 2004 WL 503942, at *4 (W.D. Wis. Mar. 9, 2004) ("Although the Eastern District has not construed the claims of the '742 patent, it is familiar with the general silicon-based tuner technology and specific accused devices at issue in the current dispute. . . . Consequently, the Eastern District is in the best position to manage the parties efficiently and achieve a prompt resolution of this dispute."); *Abbott Labs. v. Selfcare, Inc.*, No. 98-CV-7102, 1999 WL 162805, at *2 (N.D. Ill. Mar. 15, 1999) ("The two actions, even though directed to different patents, involve the same parties and substantially similar technology. They also involve similar complex factual and legal questions that will require the expenditure of considerable time and effort. Requiring two courts to devote limited resources educating themselves about the same underlying technology would undermine values of judicial economy.").

- 15 -

## V.  Conclusion

Nokia has already filed two related cases in the District of Delaware; those cases are legally, factually, and procedurally intertwined with this case; all three cases are in the early stages of the litigation; and all three cases arise out of the same business dispute based on the same technology and same products.  Moreover, Apple has filed three related cases against HTC in the District of Delaware; Apple has moved to consolidate these cases with the two Nokia cases; and three of the patents that Apple has asserted in this case have also been asserted against HTC in Delaware.  In this context, the District of Delaware is a clearly more convenient forum for the parties and the witnesses, and the interests of justice plainly compel transfer.  For all of these reasons, Apple respectfully requests that the Court transfer this case to the United States District Court of Delaware.


GODFREY & KAHN, S.C.


OF COUNSEL:                                     By:   _s/James D. Peterson_____
                                                      James Donald Peterson (# 1022819)
WILMER CUTLER PICKERING                               One East Main Street, Suite 500
HALE AND DORR LLP                                     P.O. Box 2719
                                                      Madison, WI 53701-2719
William F. Lee                                        Tel:  (608) 257-3911
Cynthia D. Vreeland                                   Fax: (608) 257-0609
Dominica E. Massa                                     jpeterson@gklaw.com
60 State Street, Boston, MA 02109
Tel. (617) 526-6000                             *Attorneys for Defendant and*
                                                *Counterclaim-Plaintiff Apple Inc.*
Keith Slenkovich
1117 California Avenue
Palo Alto, CA 94304
Tel. (650) 858-6000

Dated:  June 29, 2010


5137257_2


- 16 -